ORAMEL HUTCHINSON AND OTHERS *v.* THE TOWN OF CHESTER.

*Highways. Towns. Selectmen.*

The courts of this State have no power, through the action of commissioners, to order hills graded upon an existing completed highway, when no new survey is made and no new highway or alteration of the location of an old one is established.

The selectmen of a town can only direct the grading of hills upon a highway in their capacity of general supervisors of the interests of the town; and their mere orders in this respect are not binding upon their successors. When acting as a board of road commissioners upon a petition for the establishment or alteration of a highway, they have no power, in that capacity, to order the hills graded.

PETITION for a mandamus, or some other proper process, to the county court, to bring up the record of their proceedings in reference to a certain petition by the plaintiff for the alteration of a highway in the town of Chester.

It appeared that the plaintiffs petitioned the county court in Windsor county, for the appointment of commissioners to alter the highway in question, for the purpose of avoiding the high grade of hills and deep drifts of snow unavoidable thereon, rep-

resenting that they had applied in vain to the selectmen for such alteration ; that the county court appointed commissioners, who reported that the public good and the convenience of individuals did not require an alteration in the location of the highway ; but that they did require that some portions of the road should be graded, and that they ordered the town of Chester to grade the same in certain localities down to a prescribed grade.

The defendants, in the county court, excepted to this report, on the ground that the commissioners had no power to order such grading.

The county court, at the May Term, 1859,—REDFIELD, Ch. J., presiding,—sustained the defendants' objection to the report, and dismissed the petition.

*O. Hutchinson* and *S. Fullam,* for the petitioners.

*L. Adams,* for the defendants.

POLAND, J. This case presents a question of some practical importance, viz.: have the courts of this State, through the action of commissioners, any legal power to order hills graded upon an existing, completed highway, when no new survey is made, and no new highway or alteration of an old one, is laid and established ?

The entire subject and jurisdiction of laying out and establishing highways is regulated by statute, and courts and committees have no powers except such as the statute confers.

The selectmen of towns are constituted a board to lay out and alter highways wholly within one town. The county courts are authorized, through the aid of commissioners, to establish or alter highways extending through, or into, more than one town, but wholly within the county ; and the supreme court have the same powers when the highway, petitioned to be laid or altered, extends through or into more than one county. Prior to 1848 neither of these tribunals had any power except to lay out and establish highways, or alter existing ones ; they had nothing to say in reference to the manner in which the road should be built ; that was left wholly to the towns, under the general provisions of

the statute imposing upon them the liability to build and maintain all highways within their limits, in a safe and sufficient manner. By the act of 1848, (Comp. Stat. 171, sec. 54,) commissioners appointed by the supreme or county court to lay out or alter highways, were authorized, "to order and direct the town or towns in or through which such highway shall be laid out or altered, to grade the hills thereon to such an inclination as said commissioners shall think proper," etc., and said courts were authorized to make such orders binding upon the towns.

It will be noticed that this act confers no such power upon selectmen when they lay out or alter a highway. It is argued however by the petitioners that selectmen have always exercised the power to order hills graded to a particular inclination, both upon roads laid out by them, and also on existing highways, and this in some sense is doubtless true.

But in such cases selectmen have acted in an entirely different capacity from that in which they act in laying out and altering roads, where they act not as the agents of the town, but rather as a board of road commissioners in behalf of the public generally, but within a limited sphere.

They are also the official agents of the town, having the general oversight and superintendence of the corporate affairs and interests, and among the most important of these corporate duties is that of building and keeping in repair the highways within their limits, and it is within the scope of this official agency of selectmen to see that this duty is performed. In directing the manner of building roads, selectmen act in this latter capacity, and not in virtue of their authority to lay out highways.

It is quite clear, we think, that if selectmen, in laying out a road should order that hills upon it should be graded to a particular inclination, a subsequent board of selectmen who, as agents of the town, should build such road, would not be bound by the direction, because no legal power existed to make it.

In the present case, if the petition to the selectmen had been merely to order hills graded on an existing highway, it would have been asking what, in their capacity to lay roads, they had no right to do, and therefore their refusal was right, and there

Hutchinson et al. *v.* Town of Chester.

was no ground to appeal from their refusal to the county court, by a new petition, for such appeal (which it is virtually,) is given upon the ground that selectmen have neglected and refused to do what was their legal duty, and what they had legal power, to do.

It is probably true that where selectmen, on proper petition, refuse to lay out or alter a highway, and for such refusal a new petition is brought to the county court, and commissioners are appointed, the commissioners on laying the highway might order the hills upon it graded, though the selectmen could not, for the statute has given the power to the commissioners and not to the selectmen. It is urged by the petitioners that this order to grade hills on an old highway, is such an alteration of the same as to bring it within the words of the statute, " lay out or alter," and fairly within the scope of the petition. But if this is a sound view of the subject, then there was no need whatever of the statute of 1848 for the power to *alter* highways existed as well before the passage of that act as after. That language of the statute was always understood to mean an alteration of the location of the road and not an alteration in the grade, and its meaning was not altered by the act of 1848. We are of opinion that by the plain meaning and language of the act, the power given to committees to order hills graded only extends to such roads as they lay out or alter, and where they report a survey of a new road wholly, or the alteration of an old one, which is accepted and established by the court, and ordered to be built, and does not extend to cases like the present, where no highway is either laid or altered.

We do not mean to be understood as saying that in a case where a highway is surveyed and laid and established by the court, but which for some portion of the distance might run over an old highway, the commissioners and court would not have the power to order hills graded, even on that part of the survey which covered an old highway.

It appears to us that if it were allowed that in every case where a sufficient number of persons to get up a petition to selectmen, happen to think that a hill in an existing highway, is too steep for the public good, they might petition the selectmen to reduce it, and on their refusal apply to the county court for a

committee to do it, it would be productive of great mischief and vexation, and we are not aware of any necessity which exists for such enlargement of the statute.

The petition is, therefore, dismissed with costs.